UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Case No. 1:24-cr-61 (RBW) |
| v. | : | |
| | : | |
| **MATTHEW BALLEK** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence the defendant to a Guidelines sentence of 97 months' incarceration, followed by ten years of supervised release.

**I.     Factual and Procedural Background**

Leading up to January 23, 2024, a member of the FBI Washington Field Office's Child Exploitation and Human Trafficking Task Force was working in an undercover capacity from an office located in the District of Columbia. *Presentence Investigation Report*, ¶ 22. In that capacity, the undercover agent was monitoring an online application that is geared toward men looking to engage in sexual activity. *Id*. The application allows users to post messages in a public chat room that is visible to online users and allows users to message each other privately. *Id*. While many users of the application are looking for consensual, adult sexual relationships, a subset of its users is known to be interested in the sexual exploitation of children and in discussing and trading child sex abuse material. *Id*.

On January 23, 2024, the undercover agent posted a message in the application's public chat room that stated he was interested in "no limits taboo." *Id*. ¶ 23. "No limits" and "taboo"

1

are terms commonly used by individuals with illicit sexual proclivities, including an interest in child pornography. *Id.* A user of the application, later identified as the defendant, Matthew Ballek, sent the undercover agent a private message. *Id*. The conversation then moved to the messaging application Telegram, and the defendant and the undercover agent communicated through a private, end-to-end encrypted "secret chat." *Id.*

During the conversation on Telegram, the defendant sent the undercover agent three videos, all of which depict adult men engaged in sexually explicit conduct with prepubescent minor boys. *Id.* at ¶24. The first video is approximately 36 seconds long and depicts an adult male digitally penetrating a toddler boy's anus. *Id*. The second video is approximately 48 seconds long and depicts an adult male penetrating a toddler boy's anus with his erect penis. *Id*. The third video is approximately 36 seconds long and depicts an adult male inserting his erect penis in the anus or buttocks of a prepubescent boy. *Id.*

On February 7, 2024, law enforcement arrested the defendant at his apartment in the District of Columbia and searched the apartment pursuant to a lawfully issued warrant. *Id*. at ¶25. Among the evidence seized during the search was the defendant's Samsung Galaxy S23 Ultra cellphone bearing IMEI 358835963072563. *Id.* The FBI forensically examined the defendant's cellphone pursuant to the warrant and determined that it contained 10 unique videos and at least 21 unique still images that constitute child pornography as that term is defined by federal law. *Id*.

The defendant pled guilty to one count of Possession of Child Pornography on October 4, 2024. *Id.* ¶ 7. The government now files this Sentencing Memorandum, and respectfully requests that the Court impose a Guidelines sentence of 97 months, to be followed by 10 years of supervised release.

II.    **The Sentencing Guidelines and Guidelines Analysis**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the

mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 542 U.S. 961 (2004). Consequently, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 543 U.S. at 244.

In post-*Booker* cases, the Supreme Court has instructed that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated the defendant's adjusted offense level under the Sentencing Guidelines as follows:

Base Offense Level (U.S.S.G. § 2G2.2(a)(2))                                                                 18

*Specific Offense Characteristics*

| | |
|---|---:|
| Depictions of prepubescent minors under 12 (U.S.S.G. §2G2.2(b)(2) | +2 |
| Knowingly engaged in distribution (U.S.S.G. §2G2.2(b)(3)(F) | +2 |
| Material portraying sadistic or masochistic conduct (U.S.S.G. §2G2.2(b)(4) | +4 |
| Use of a computer U.S.S.G. §2G2.2(b)(6) | +2 |
| Involved 600+ images U.S.S.G. §2G2.2(b)(7)(D) | +5 |
| Acceptance of responsibility U.S.S.G. §3E1.1(a) & 3E1.1(b) | -3 |
| Total Adjusted Offense Level | 30 |

*See* PSR at ¶¶ 30-41.

The U.S. Probation Office calculated the defendant's criminal history as Category I. *PSR, at* ¶ 50. Accordingly, the defendant's total adjusted offense level is 30, and his corresponding Guidelines range is 97-121 months incarceration. *Id.* at ¶ 91. The Government agrees with this calculation.

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More

> importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. See 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that *significantly* increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, while the Court must balance all the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide a helpful benchmark and remain a necessary factor for the Court's consideration.

### III. A Guidelines Sentence of 97 Months Incarceration is Consistent with 18 U.S.C. § 3553(a) Factors

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1] These factors include:

(1)    the nature and circumstances of the offense;
(2)    the history and characteristics of the defendant;
(3)    the need for the sentence imposed –

---

[7] Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines serve only an advisory function. *Id.* at 245. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the

5

applicable Guidelines range" as its starting point. *Booker* did not change "how the Guidelines range is to be calculated." *United States v. Mattea*, 895 F.3d 762, 766 (D.C. Cir. 2018) (internal citations and quotations omitted).

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

(4)    the kinds of sentences available;

(5)    the applicable sentencing guidelines range for the offense;

(6)    pertinent policy statements issued by the U.S. Sentencing Commission;

(7)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(8)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

### A. The Nature and Circumstances of the Offense

The Defendant's conduct in this case was more serious than the typical conduct that results in a conviction for Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4). Here, the Defendant not only possessed child pornography videos, but he also distributed child pornography videos to an undercover police officer that he had met on-line. In addition, the child pornography videos that the defendant distributed were particularly violent and involved particularly vulnerable children. Several of the videos shared by the defendant depicted the forced, painful rape of toddlers and prepubescent boys by adult men.

The victims depicted in the videos that were possessed and shared by the defendant are some of the most vulnerable victims in the community—toddlers and very young children.

6

Children captured in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual views the images for their own sexual gratification. As eloquently explained by the Sixth Circuit in a child pornography case:

> . . . we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of . . . children who are forced into these roles.
> . . . every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-22 (6th Cir. 2011) (quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Each one of the images and videos the Defendant possessed and distributed represents an innocent child victim who had the worst moments of his or her life forever memorialized and spread to countless offenders all over the world via the internet. *See Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010) (finding that "[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"). In *New York v. Ferber*, the U.S. Supreme Court noted:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the

7

> pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 747, 759 n.10 (1982), *quoting* Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

The Defendant's conduct in possession and distributing child pornography is extremely serious and harmful. Given the serious nature of the Defendant's criminal conduct, a Guidelines sentence of 97 months incarceration is appropriate.

### B. The History and Characteristics of the Defendant

The Defendant is an intelligent, well-educated young man, with strong family support who reported that he has never suffered from or been treated from any mental of emotional health problems. *See* PSR at ¶ 58, 60, 68. At the time that he committed the instant offense, the defendant had graduated with honors from McGill University, had earned a master's degree in financial economics, and was employed as an investment analyst, earning $100,000 a year. *Id.* at ¶ 76, 77, 80. It is difficult to image why someone with these advantages in life would choose to risk everything he has earned and has been given, by engaging in dangerous and harmful criminal conduct like the defendant has done in this case. At base, the defendant's choice to engage in this harmful and risky behavior, even when he has apparently not been suffering from any diminished capacity or other mitigating condition, demonstrates a stunning lack of empathy for the vulnerable young children who are the victims of the defendant's crimes. This mindset poses a serious risk to the community, and demonstrates the defendant's need for specialized treatment to address his dangerous criminal behavior.

While the Government acknowledges that the Defendant has no prior criminal record, his lack of a criminal history was accounted for when determining the applicable Guidelines range. Therefore, it

should not serve as a reason to vary from a Guidelines sentence in this case. Under these circumstances, a Guidelines sentence of 97 months incarceration is appropriate.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The sexual exploitation of children, including the possession of child sexual abuse material, has devastating consequences for the children depicted in these images and videos. Once they find their way onto the Internet, images and videos depicting the sexual abuse of a child will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade such images and videos for their own sexual gratification. Furthermore, consumers of child pornography, like the Defendant, create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff,* 501 F.3d 250, 259-60 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"); *see also United States v. Accardi*, 669 F.3d at 345 (D.C. Cir. 2012) (emphasizing that "child pornography creates an indelible record of the children's participation in a traumatizing activity, and the harm to the child is only exacerbated by the circulation of the materials.") In *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007), the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

There is perhaps no greater invasion of privacy than that caused by the dissemination and

consumption of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child must live with the memory of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

The Court need only review the Victim Impact Statement from one of the victims in the images and videos the Defendant possessed in order to understand the devastating effect that the production and dissemination of those videos actually has had on real child victims. Therefore, with respect to 18 U.S.C. § 3553(a)(2)(A), a Guidelines sentence of 97 months' incarceration accounts for the seriousness of the Defendant's conduct.

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence with respect to child pornography offenses is necessary for three reasons. First, serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production.

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*Goldberg*, 491 F.3d at 672.

Second, both Congress and the courts have recognized the high recidivism rates for these types of offenders. *See* Blaisdell, Krista, Note, *Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val.U.L.

10

Rev. 1155, 1192, n.150 (2009) (compiling congressional statements regarding the high risk of recidivism among child sex offenders); *Accardi*, 669 F.3d at 346 (noting that "a number of circuits have upheld [sentences] . . . for defendants convicted of possession of child pornography based on the same general concerns about recidivism") (citing *United States v. Cope*, 527 F.3d 944, 952 (9th Cir. 2008) (noting that, there, the "sentence [was based] on general concerns about recidivism and protection of the public."))); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008); *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011) ("We need evidence-driven law just as we need evidence-driven medicine . . . statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children") (citations omitted)).

Third, there is an undeniable link between sexual contact offenses and the receipt and distribution of child pornography. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." *See* Lanning, Kenneth V., *Child Molesters: A Behavioral Analysis – For Professionals Investigating the Sexual Exploitation of Children*, Office of Juvenile Justice and Delinquency Prevention, Fifth Ed. 2010, at 107. The link between possession of child sexual abuse material contact offenses is apparent here, where the Defendant was traveling with the intent to sexually abuse a child when he was arrested in this case.

Each of these factors is important in this case. The Defendant was a participant in the market for images of child sexual abuse material. The Defendant purposefully sought to participate in this market, by seeking other like-minded individuals on-line and engaging with them in the consumption of child sexual abuse material. Imposing a Guidelines sentence of incarceration for the Defendant is necessary to deter him and other likeminded criminals from continuing to participate in that market.

### F. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

11

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).

While it is true that other offenders sentenced in this District on charges related to the possession of child pornography have received sentences below the Guidelines sentence that the Government is requesting, imposing a Guidelines sentence of 97 months in this case would not create an unwarranted disparity. This case is easily distinguishable from most other possession cases, in that this case involves not only possession, but distribution of child pornography videos. In addition, as described above, the material distributed by the defendant in this case was particularly violent and involved particularly young and vulnerable child victims, including toddlers.

The Judiciary Sentencing Information (JSIN) system indicates that, for defendants who were sentenced to incarceration in the past five years and whose primary guideline was §2G2.2 with a Final Offense Level of 30 and a Criminal History Category of I, the average length of imprisonment imposed was 71 month(s) and the median length of imprisonment was 72 month(s). *See* Exhibit 1. However, when an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also Accardi*, 669 F.3d at 346 (concluding that a within-Guidelines sentence for a child-pornography offense did not produce an unwarranted disparity when the images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences). The Government's recommended sentence of 97 months reflects the more serious nature of the Defendant's conduct

and the fact that the Defendant not only possessed but also distributed child pornography. Given all these factors, the Government's recommended sentence of 97 months' incarceration avoids creating an unwarranted sentencing disparity between defendants with similar records who have been convicted for similar conduct.

### IV. The Victims are Entitled to Restitution

Prior to December 7, 2018, Title 18 U.S.C. § 2259 directed that, "notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offenses under this chapter." 18 U.S.C. § 2259(a); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution was defined to include "the full amount of the victim's losses," which includes any costs incurred by the victim for:

    (A) Medical services relating to physical, psychiatric, or psychological care;

    (B) Physical and occupational therapy or rehabilitation;

    (C) Necessary transportation, temporary housing, and child care expenses;

    (D) Lost income;

    (E) Attorneys' fees, as well as other costs incurred; and

    (F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015). The Court may not decline to issue an order under this section because of the economic circumstances of the defendant. 18 U.S.C. § 2259(B)(i).

In *Paroline v. United States*, 572 U.S. 434 (2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood

abuse appears in the pornographic materials possessed." *Paroline*, 572 U.S. at 439. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps. First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 448. Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 457-59. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 455, - the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 458. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id*. at 459. That is, in part, because a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id*. Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id*. The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id*. The Court emphasized that there

14

is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*.

The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*. at 460.

Congress has since amended Section 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000.00. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (December 7, 2018). As detailed in the Restitution Request materials submitted to this Court under seal, some of the victims depicted in the images and videos the Defendant uploaded, viewed, possessed, and distributed are seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income, loss of housing, and for various medical expenses. *See United States v. Monzel*, 930 F.3d at 486 (D.C. Cir. 2019) (noting that *Paroline*'s § 2259(b) restitution calculation is based on the defendant's "contribution to [the victim's] '*general* losses,'" and that the district court's calculation should be "a matter of 'discretion and sound judgment,'" considering the *entire totality* of the defendant's contributions, rather than a narrow, unnecessarily precise "exercise in long division") (emphasis added) (citing *Paroline*, 572 U.S. at 459-60)). Thus, for the reasons set forth above, the government respectfully requests that the Court shape an appropriate restitution award consistent with those in the Proposed Restitution Order attached as Attachment A, to be paid by

15

the defendant.

V.     **Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. As explained herein, each of these factors requires a lengthy sentence of incarceration within the sentencing guideline range. Based on these factors, the government respectfully requests that the Court impose a Guidelines sentence of 97 months' incarceration followed by a period of ten years of supervised release.

        Respectfully submitted,

        JEANINE FERRIS PIRRO
        UNITED STATES ATTORNEY


By:     */s/ Karen Shinskie*
        KAREN SHINSKIE
        DC Bar Number 1023004
        Assistant United States Attorney
        U.S. Attorney's Office
        601 D Street, NW
        Washington, D.C.
        Office: 202-730-6878
        Karen.shinskie@usdoj.gov